# SUPREME COURT.

In the Matter of the Application for an attachment against
Louis D. Pilsbury.

*Attachment — to compel superintendent of the Albany penitentiary to give
evidence before a committee consisting of five supervisors of the county of
Albany and the mayor and recorder of the city of Albany — when applica-
tion for, will be denied.*

Chapter 152 Laws of 1844 provides for the construction of a penitentiary
in the county of Albany. Section 4 provides: "The management and
direction of said penitentiary, when completed, shall be under the con-
trol and authority of the said board of supervisors and the said mayor
and recorder of the city of Albany, who are hereby authorized and
empowered, by their votes in joint meeting, to establish and adopt rules
for the regulation and discipline of said penitentiary, to appoint officers
to take charge thereof, to fix their compensation and prescribe their
duties and generally to make all such by-laws and ordinances, in relation
to the management and government thereof, as they shall deem expe-
dient." At a joint meeting  *  *  *  " of the board of supervisors of
the county of Albany and the mayor and recorder of the city of Albany,
a committee, consisting of five supervisors and the mayor and recorder
aforesaid, were charged with an investigation into the effects and con-
sequences of convict labor in the penitentiary, and, to that end, to send
for persons and papers, to take evidence under oath and  *  *  *  to
report to this board the result of their labors, together with such recom-
mendations as the inquiry may commend to their judgment, at as early
a day as practicable." The application for attachment against the super-
intendent of the Albany penitentiary to compel him to give evidence
and produce his books and papers before such committee, he having
refused so to do, is made upon certain provisions of the Revised Statutes
(*pages* 879, 880 *of vol.* 1, *6th edition*), sections 44, 45, 46, 47 and 48
providing for the examination, by the *board of supervisors*, of any county.
of any officer of the county or any person or witness upon any subject
or matter within the jurisdiction of said board:

*Held, first,* that the witness was not required to attend either by or before
 *the board of supervisors,* or by or before any committee of such board.

Matter of Pilsbury.

The committee, before which the witness was summoned, was not appointed by the board of supervisors, when convened as such, but was one appointed by "the board of supervisors of the county of Albany and the mayor and recorder of the city of Albany, in joint meeting," assembled. The application must fail because no committee of *the board of supervisors,* appointed by *the board,* nor any committee consisting of *supervisors only,* appointed at a joint meeting, or anywhere, has required the witness' attendance before it.

*Second.* Even if the committee, appointed "in joint meeting," or the supervisors alone who formed a majority of it, could be called a committee of the *board of supervisors,* and the right to summon the witness be founded upon the clause in the section of the statute (1 *R. S.* [6*th ed.*], *p.* 879, *sec.* 44), which provides for his examination "upon any subject or matter within the jurisdiction of such board," the application for the attachment must be denied, for the reason that section 4 of chapter 152 of the Laws of 1844 places "the management and direction of the said penitentiary, when completed, * * * under the control and authority of the said board of supervisors and the said mayor and recorder of the city of Albany;" and, therefore, the "subject or matter" is not "within the jurisdiction of such board" of supervisors.

*Third.* He cannot be examined under the clause of section 44, giving the board of supervisors or its committee the right to examine "any officer of the county" as he is no county officer.

*Fourth.* Nor can he be compelled, under section 44, to produce "any book, account, voucher or document" which such committee may need as "relating to the affairs or interests of such county." Such book, account, voucher or document "must relate" to the affairs or interests of such county. Although, in some sense, the documents sought might be considered as relating "to the affairs or interests" of the county of Albany, yet the better and safer construction *seems* to be, that the limits upon the oral testimony apply to the written, and that the "*affairs or interests*" spoken of are those over which the *board of supervisors,* as such, exercise control. The subject (*convict labor in prisons*) the board of supervisors, *as such,* have no control over.

*Held,* further, that the application for an attachment against the superintendent of the Albany penitentiary cannot be granted, for the reason that he has not been subpœnaed by or before any board of supervisors, or by or before any committee of such board, and also because even though the committee summoning him could be called a committee of the board of supervisors, a case is not made out under the statute.

*Quere.* Can the legislature confer upon the board of supervisors, or a committee thereof, such general and sweeping powers as the statute in words seeks to confer?

*Albany Special Term, September,* 1878.

APPLICATION to Mr. justice WESTBROOK for an attachment against Louis D. Pilsbury, the superintendent of the Albany penitentiary, to compel him to give evidence before a committee, consisting of five supervisors of the county of Albany, and the mayor and recorder of the city of Albany, appointed at and in a joint meeting of the board of supervisors of the county of Albany and the mayor and the recorder of the city of Albany.

*N. P. Hinman*, for the application.

*Henry Smith* and *Wm. A. Young*, for Mr. Pilsbury.

WESTBROOK, J.— Chapter 152 of the Laws of 1844 provides for the construction of a penitentiary in the county of Albany. By section 1 of said act, the board of supervisors of such county are charged with the erection of the building. By its second section commissioners were appointed to select a site for the building, and within six months from the passage of the act " to report such location, together with a detailed plan for the construction, management and discipline of the said penitentiary, and an estimate of the expense of the land for the site and of the contruction thereof to the said board of supervisors."  By the third section of the act, the board of supervisors with the mayor and the recorder of the city of Albany were to act upon the said report, with full power to " alter, modify, reduce or increase the site, plan or expense of construction of said penitentiary as specified in the said report,' in any manner as to them shall seem fit, expedient or necessary." The commissioners are then charged with the duty of selecting the site and constructing the building according to the directions given by the board of supervisors and said mayor and recorder.  In case, however, the board of supervisors, mayor and recorder failed to approve of any plan for the erection thereof then the commissioners were charged with the duty of erecting the building according to the plan which they

might adopt. The fifth section provides for the borrowing of money by the board of. supervisors to carry out the objects of the act.

The foregoing synopsis of the provisions of the act is given to show in what manner the penitentiary was built. As the fourth section is one upon which the result of this application largely depends, it is worthy of separate and independent statement. That section provides : " The management and direction of the said penitentiary, when completed, shall be under the control and authority of the said board of supervisors, and the said mayor and recorder of the city of Albany, who are hereby authorized and empowered, by their votes in joint meeting, to establish and adopt rules for the regulation and discipline of said penitentiary, to appoint officers to take charge thereof, to fix their compensation and prescribe their duties and generally to make all such by-laws and ordinances, in relation to the management and government thereof, as they shall deem expedient."

At a joint meeting  *  *  *  " of the board of supervisors of the county of Albany, and the mayor and recorder of the city of Albany," as the subpœna served, and for noncompliance with which an attachment is asked for, expressly states, a committee consisting of five supervisors, and the mayor and recorder aforesaid, were charged with an investigation into the effects and consequences of convict labor in the penitentiary, and to that end " to send for persons and papers, to take evidence under oath, and  *  * · *  to report to this board the result of their labors, together with such recommendations as the inquiry may commend to their judgment, at as early a day as practicable."

Mr. Louis D. Pilsbury, the superintendent of the penitentiary, was summoned to appear before this committee " to give such information touching the subject of inquiry as may be in your " (his) " possession," and was further required to bring with him " before said committee all books of account, contracts, papers, and other documents in his custody in

Matter of Pilsbury.

anywise relating to or that may be required in the investigation of the subject embraced in the preamble, resolutions and motion adopted by said board." Mr. Pilsbury, after undergoing a partial examination, by the advice of counsel, denied the power of the committee to make the investigation, and refused to answer questions, or to produce books and papers. On proof of these facts, application is made to me, as a justice of the supreme court, to issue an attachment against said Pilsbury to compel his attendance before said committee.

The application is made upon certain provisions of the Revised Statutes, which will be found on pages 879, 880, of volume 1, sixth edition; sections 44, 45, 46, 47 and 48. The forty-fourth section provides: "Whenever the board of supervisors of any county shall deem it necessary or important to examine any person or a witness upon any subject or matter within the jurisdiction of said board, or to examine any officer of the county, in relation to the discharge of his official duties, or to the receipt or disposition by him of any moneys, or concerning the possession or disbursement by him of any property belonging to the county, or to use, inspect or examine any book, account, voucher or document in the possession of such officer or other person, or under his control, relating to the affairs or interests of such county, the chair man or president of such board shall issue a subpœna in proper form, commanding such person or officer to appear before such board at a time and place therein specified, to be examined as a witness; and such subpœna may contain a clause requiring such person or officer to produce on such examination all books, papers and documents in his possession or under his control, relating to the affairs or interests of the county."

Provision is then made, by section 45, for the service of the subpœna; by section 46, for the exercise of the power conferred upon the board of supervisors by section 44, upon a committee of such board; and by section 47, in case the party subpœnaed shall not obey the process issued, for a

Matter of Pilsbury.

report "of the facts to the county judge, or to a judge of the supreme court, or of the court of common pleas of any of the cities of the state, who shall thereupon issue an attachment in the form usual in the court in which he shall be judge, directed to the sheriff of the county where such witness was required to appear and testify, commanding the sheriff to attach such person, and bring him before the judge by whose order such attachment was issued." Provision is then made by subsequent sections for proceedings upon the return of the attachment, but as these are of no consequence upon this application, a particular statement of their contents is not made.

In the examination of the question submitted — the right to attach Mr. Pilsbury for refusing to obey the subpœna — it will be remembered that the power of the court in a proper action to compel the attendance of a witness, and the production by him of books and papers, is not before me. The simple point is, have I, as a judge of the supreme court, under the statute referred to, upon the present application, any such power? It should also be observed that the party summoned must have been required to attend either by and before the board of supervisors of a county, or by and before a committee of such board. The matter, also, upon which the witness is to be summoned must be "within the jurisdiction of such board," or he must be an "officer of the county." And lastly "such officer or other person" may be required to produce "any book, account, voucher or document * * * relating to the affairs or interests of such county." Is the present application within these provisions? I think not, and for the following reasons:

First. The witness was not required to attend either by or before the board of supervisors, or by or before any committee of such board. The committee before which Mr. Pilsbury was summoned, was not appointed by the board of supervisors when convened as such, but was one, as the subpœna served, and the petition presented to me show, appointed by "the

board of supervisors of the county of Albany, and the mayor and recorder of the city of Albany in joint meeting" assembled. The separate meeting and organization of the board of supervisors could not be preserved, when assembled in "joint meeting" with other officers. A new body was thereby formed, just as much so, as when the members of the senate of the state, and the judges of the court of appeals assemble themselves together to make a "court for the trial of impeachments." The supervisors and the mayor and recorder were convened in joint meeting, to act upon matters, over which neither, when comprising a separate body, had jurisdiction (as will presently be shown), and consequently by no form of words could there be a committee of the board of supervisors selected thereat. The declaration embodied in the resolution of appointment, which was adopted "in joint meeting," to the effect "that a committee of five members of this board, together with the mayor and recorder be appointed," could not possibly make such five a committee of the board of supervisors, even though that was its purpose, because it was not selected by such board when professing to be organized as such. As well might a majority of a committee, when selected by senators and judges convened as a court of impeachment, be called a senate committee, because the form of the resolution appointing it declared, "that a committee of five members of this senate, together with the chief judge and one associate judge of the court of appeals be appointed," etc. It could not be a senate committee because it was not chosen by the senate convened as such, and also because, in words, it does not profess to choose a senate committee, but a committee composed of five senators and two judges. Precisely this argument applies to the case before us. The board of supervisors was not assembled as a board, but its individual members were assembled with other officials "in joint meeting." Such joint meeting appointed "a committee," and in its make up it was to consist "of five members of this board," i. e., board of supervisors, "together

with the mayor and recorder." Neither does the resolution adopted, by its terms, as has been argued, profess to make an independent committee of five members from the board of supervisors. Its language is : " Resolved, that a committee of," *i. e.*, consisting of. Its resolve is to appoint a committee, and the preposition " of " is evidently used in the sense just suggested, and not in that claimed for it. This application, then, must fail because no committee of the board of supervisors, appointed by the board, nor any committee consisting of supervisors only, appointed at a joint meeting, or anywhere, has required Mr. Pilsbury's attendance before it.

Second. Assuming, for the sake of argument, however, what is not true in fact, that the committee appointed " in joint meeting," or the supervisors alone who formed a majority of it, could be called a committee of the board of supervisors, there are other objections equally fatal. If the claim of the right to summon the witness be founded upon the clause in the section of the statute quoted (*sec.* 44, *vol.* 1, *R. S.* [*6th ed.*], *p.* 879), which provides for his examination " upon any subject or matter within the jurisdiction of such board," the answer is : " Section 4 of chapter 152 of the Laws of 1844 places the management and direction of the said penitentiary, when completed, * * * under the control and authority of the said board of supervisors and the said mayor and recorder of the city of Albany ; " and, therefore, the " subject or matter " is not " within the jurisdiction of such board " of supervisors. If the position is that Mr. Pilsbury can be examined under the clause of section 44, giving the board of supervisors or its committee the right to examine " any officer of the county," the plain objection exists that he is no county officer. He is not so known, called or styled in any statute, nor is he appointed or controlled by county officials ; and he is simply, to use the language of section 4 of chapter 152 of Laws of 1844 aforesaid, " one of the officers " appointed by the said board of supervisors and the said mayor and recorder, " to take charge " of the penitentiary, and is the " principal keeper"

thereof.   If it be argued that Mr. Pilsbury can at least, under said section 44 of the Revised Statutes, be compelled to produce "any book, account, voucher or document" which such committee may need as "relating to the affairs or interests of such county," because, though he is not one to be examined as a witness under the former parts of the statute already considered, he at least is a "person" who has such documents, the difficulty is that such "book, account, voucher or document" must relate "to the affairs or interests of such county."   In some senses, perhaps, the documents sought might be considered as relating "to the affairs or interests" of the county of Albany.   Its citizens, as such, are undoubtedly interested in the management of the penitentiary.   Their money built it, and if it fails to pay expenses, their money must supply any deficiency.   This line of argument, however, would extend the right of inquiry by boards of supervisors into matters and things over which the legislature of the state is alone supreme ; a conclusion which no one would adopt as sound.   Considering and construing the whole section together, it is reasonably clear, I think, that the expression is used in no such broad and universal sense.   In the former part of the section, the right to examine the witness is granted only upon a "subject or matter within the jurisdiction of such board," or when the witness is "an officer of the county," and it cannot be assumed, that whilst the right to compel the giving of oral testimony is clearly limited either by the character of the subject-matter of the evidence, or by the personalty of the witness, the legislature intended to confer the power of compelling the production and giving of documentary evidence without any such limitation.   Why should any such distinction have been made ?   Is it not a better and safer construction to say that the limits upon the oral testimony apply to the written, and that the "affairs or interests" spoken of are those over which the board of supervisors, as such, exercise control ?   Any broader interpretation of the law, when we consider the number of such boards in the state, would subject its citizens to examin-

ations so frequent and numerous as to be intolerable.    The subject (convict labor in prisons) upon which Mr. Pilsbury was to be examined, and over which the board of supervisors, as such, have no control, is very suggestive as to the number of individuals the board of supervisors of the county of Albany could annoy, if their powers are as broad as they are claimed to be.

Having reached the conclusion that the application for an attachment against Mr. Pilsbury cannot be granted for the reason that he has not been subpœnaed by or before any board of supervisors, or by or before any committee of such a board, and also because, even though the committee summoning him could be called a committee of the board of supervisors, a case is not made out under the statute, it is perhaps, unnecessary to go further.    The application, however, suggests another difficulty worthy of some consideration, which is this, can the legislature confer upon the board of supervisors, or a committee thereof, such general and sweeping powers as the statute in words seeks to confer ?   If a county, whenever interested, can, through its officers, compel any " person, " anywhere in the state, to appear before them, and require him to produce " any book, account, voucher or document in the possession of such · * * * person, or under his control, relating to the affairs or interests of such county," then why may not any other municipal corporation (a town or a city for instance) be empowered to do the same thing?   And if a municipal corporation may thus be made omnipotent, why not any other artificial body ?   And if the power is useful and should be intrusted to corporations (municipal or otherwise) why should not individuals enjoy and possess the same right and power ?   The courts, the regularly organized instrumentalities for the protection of public and private rights, possess ample power to guard and protect them, and it would seem to be a most dangerous abuse of private rights, if statutes such as those upon which this proceeding is founded can be upheld.   In *Whitcomb's Case* (120 *Massachusetts*, 118, *also*

Matter of Pilsbury.

*reported in 21st American Reports*, 502) it was held that a statute conferring upon the common council of a city the power to punish as a contempt a refusal of a witness summoned before it to answer questions, was unconstitutional and void. The principle of that decision seems to be applicable to the statute under consideration. The right to summon and examine witnesses, as well as the right to punish for contempt, is a supreme legislative and judicial power, and if the one cannot be delegated to a body upon whom no such power is conferred by the Constitution, can the other? Possibly, in our state, under section 17 of article 3 of our Constitution, which authorizes the conferring upon boards of supervisors "powers of local legislation and administration," the provisions of the statute under consideration may be upheld. It seems, however, to me very doubtful, but as the decision of this application does not depend upon the constitutionality of the law, and as the supreme court, at general term, in *The People* agt. *Learned* (6 *Hun*, 626), has decided that legislation conferring similar powers upon a commission created to investigate the canals was constitutional, no further discussion of this point will be attempted. Attention is only drawn to the subject as one worthy of grave consideration. The apparent conflict between the Massachusetts case and ours, the want, as it seems to me of any sound principle upon which such statutes can be upheld, and the grave evils and abuses which may flow from special and exceptional legislation of this character have induced me to make these suggestions, to the end that this very grave question may be hereafter more carefully considered.

The application for the attachment must be denied.